IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN KENNETH TOLES,

                      Plaintiff,

    v.

TY MUELLER, JOSHUA REESE, JACLYN MADER,         OPINION and ORDER
OFFICER AUSTIN-JOHNSON, OFFICER DIX,
OFFICER DIX, OFFICER KINSELLA, OFFICER             26-cv-335-jdp
KRESS, OFFICER LEMERY, OFFICER WAGNER,
OFFICER HOLLINGER, OFFICER WOLLNER,
SERGEANT CARRASCO, and CITY OF JANESVILLE,

                      Defendants.

---

This case arises out of several interactions between John Kenneth Toles and Janesville police officers in 2023 and 2024. Toles, who is proceeding without counsel, alleges that officers arrested him, issued citations to him, and otherwise mistreated him without justification and because of his race (Toles is Black) and protected speech.

The complaint is before the court for screening under 28 U.S.C. §§ 1915(e)(2), which requires the court to dismiss any claim that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. When screening the complaint of a plaintiff without counsel, I accept the allegations as true and read the complaint liberally. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). But Toles must still "plead a plausible claim for relief," *Balle v. Kennedy*, 73 F.4th 545, 557 (7th Cir. 2023), which means that he must provide fair notice of his claim and raise his right to relief above the level of speculation, *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). Stated another way, Toles must "present a story that holds

together" under the relevant law. *Taylor v. Salvation Army National Corporation*, 110 F.4th 1017, 1028 (7th Cir. 2024).

Toles has amended his complaint three times since he filed his original complaint. An amended complaint wipes away all previous complaints, *see Massey v. Helman*, 196 F.3d 727, 735 (7th Cir.1999), so I will disregard the first three complaints and focus on the fourth, most recent complaint. *See* Dkt. 7. I will refer to Dkt. 7 (dated June 25) as simply "the complaint" for the remainder of the opinion.[1]

For the reasons below, I conclude that Toles has not stated a claim upon which relief may be granted, but I will give him an opportunity to file an amended complaint that fixes the problems identified in this order.

ANALYSIS

Toles's claims are based on five sets of incidents: (1) an August 2023 disorderly conduct citation; (2) a June 2024 encounter with the police after a neighbor called 911; (3) a July 2024 arrest and prosecution for felony possession of a firearm; (4) two August 2024 encounters with police after a neighbor made noise complaints; and (5) an October 2024 citation for disorderly conduct. I will summarize the allegations related to each incident and then consider whether those allegations state a claim. All the individual defendants are Janesville police officers. After considering the claims against the individual officers, I will consider whether Toles has stated a claim for municipal liability against the city of Janesville.

---

[1] Toles also filed a second motion for leave to proceed in forma pauperis.  Dkt. 4. I will deny the motion as moot because Magistrate Judge Wiseman already granted Toles's first motion. *See* Dkt. 3.

**A. August 2023 citation for disorderly conduct**

**1. Allegations of fact**

In August 2023 Toles delivered food to a roadside bar in Janesville. While there, Toles was assaulted by three white patrons. Two of them pushed him, and one of them threw a drink in his face. When Toles tried to leave, they blocked his path. Toles does not say how the altercation started or why.[2]

Defendant Ty Mueller arrived on the scene to investigate the conflict. The white patrons admitted that they had thrown a drink on Toles, pushed him, and threatened him. The bartender stated that Toles "had intentionally swerved at people." One of the patrons falsely stated that Toles had mentioned a Glock.

Toles provides inconsistent allegations about what Mueller did. In the body of his complaint, he alleges that Mueller "cited [Toles] alongside his three white assailants" for disorderly conduct. Dkt. 7, ¶ 24; *see also id.* ¶ 66. When Toles asked why he was being cited, Mueller said, "Everyone gets a ticket in a fight." *Id.* ¶ 19. But at the end of his complaint when summarizing his claims, Toles alleges that Mueller *arrested* him but only issued citations to the white patrons. *Id.* ¶ 84.

Toles also says that Mueller made a false statement that the bar owner had banned Toles from the bar and then later said "yes" when Toles asked Mueller whether he was "going to lie to the judge." *Id.* ¶ 21. Toles does not say what Mueller was going to lie to the judge about.

---

[2] Toles says that the police report is attached. Dkt. 7, ¶ 15. Toles attached several exhibits to his second complaint, but the police report was not one of those exhibits.

Several other officers were present: Reese, Mader, Austin-Johnson, Dix, Kinsella, Kress, Lemery, Wagner, Hollinger, Wollner, and Carrasco. Toles does not say why they were present or what they did while they were there. But he says that none of the officers intervened to help him.

### 2. Merits

I understand Toles to be asserting the following claims based on the August 2023 incident: (1) Mueller issued a citation to him and/or arrested him for disorderly conduct without probable cause; (2) Mueller arrested Toles, who is Black, but did not arrest any on the White individuals who assaulted him; (3) Mueller lied that Toles was banned from the bar; (4) Mueller stated that he would lie to a judge; (5) Reese, Mader, Austin-Johnson, Dix, Kinsella, Kress, Lemery, Wagner, Hollinger, Wollner, and Carrasco failed to intervene when Mueller issued a citation to Toles and stated he would lie to a judge; and (6) all of the officers on the scene "failed to provide a reasonable accommodation for Plaintiff's disability when he requested to leave an unsafe scene before returning to speak with them." Dkt. 7, ¶ 103. Toles's complaint does not state a claim under federal law based on any of these theories.

As for Toles's allegation that Mueller issued a citation and arrested him without probable cause, Toles does not actually allege that Mueller ever detained him. He uses the word "arrest" when describing the August 2023 incident only once in his complaint, and not in the narrative section of his complaint, only in the summary of his legal theories at the end. Dkt. 7, ¶ 84. There is no Fourth Amendment violation without a search or seizure, so if Muller cited Toles without detaining him, Toles cannot state a claim under the Fourth Amendment. "[T]here is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel v. City of Joliet,* 903 F.3d 667, 670 (7th Cir. 2018).

4

But even if Toles was detained, Toles alleges facts showing that Mueller had probable cause that Toles engaged in disorderly conduct. Toles admits that the bartender told Mueller that Toles "had intentionally swerved at people" with his car. Dkt. 7, ¶ 24. An officer could reasonably infer that intentionally swerving at bystanders qualifies as disorderly conduct under Wis. Stat. § 947.01. And the statement of a single eyewitness can support a finding of probable cause. *Moorer v. City of Chicago*, 92 F.4th 715, 721–22 (7th Cir. 2024).

Toles suggests that the bartender was lying about what happened, but it is not the officer's job to make credibility determinations when deciding whether probable cause exists. *Harney v. City of Chicago*, 702 F.3d 916, 923 (7th Cir. 2012). Toles identifies no reason why the bartender's statement was "so incredible that an officer could not reasonably believe [that he was] telling the truth." *Moorer*, 92 F.4th at 722. So Toles has not stated a claim for false arrest.

As for Toles's allegation that Mueller discriminated against Toles because of his race by "arresting Plaintiff, the Black victim of an assault, while citing but not arresting his assailants," Dkt. 7, ¶ 84, Toles will have to clarify his allegation. As already noted, the quoted statement is the only place in Toles's complaint in which he says that he was arrested for the August 2023 incident. In several other parts of the complaint, Toles alleges only that Mueller issued him a citation. *See id.* ¶¶ 2, 18–19, 23, 65–66. In fact, in paragraph 66, Toles alleges that Mueller "cited [Toles] alongside his three white assailants." If all involved received citations for disorderly conduct, then there is no basis for an equal protection claim. I will allow Toles to file an amended complaint that clarifies what happened.

As for Toles's allegations that Mueller lied about Toles being banned from the bar and threatened to lie to a judge about an unspecified issue, Toles identifies no rights that the alleged

lies violated and no injury that Toles suffered because of the statements. He does not say that Mueller attempted to stop him from going to the bar again or that Mueller actually made a false statement to a judge. Not every false statement violates the law, and a false statement (or a threat to make a false statement) is not inherently harmful. *See Freeman v. Ocwen Loan Servicing*, LLC, 113 F.4th 701, 710 (7th Cir. 2024). Without concrete harm or a cause of action, Toles cannot sue. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937–38 (7th Cir. 2022).

As for Toles's allegation that other officers on the scene failed to intervene, such a failure violates the Constitution only when the officers have reason to know that another officer is violating the Constitution. *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022). As already discussed, Toles has not alleged a constitutional violation by Mueller, so Toles has not stated a claim for a failure to intervene against other officers.

As for Toles's allegation that officers failed to provide him with a reasonable accommodation, his theory seems to be that officers violated Title II of the Americans with Disabilities Act by failing to accommodate his "Neuropathy, Stenosis, and Cervical Nerve Damage." Dkt. 7, ¶ 16. A Title II claim has three elements: (1) the plaintiff is disabled; (2) the defendants denied him access to a program, service, or activity because of his disability; and (3) he is otherwise qualified for the program, service, or activity. S*ee Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). A refusal to provide a reasonable accommodation qualifies as a denial of access. *Shaw v. Kemper*, 52 F.4th 331, 334–35 (7th Cir. 2022). But to recover damages, the plaintiff must also prove that the disability discrimination was intentional, which includes "deliberate indifference," or a failure to act despite knowing "that harm to a federally protected right was substantially likely." *Lacy v. Cook County*, 897 F.3d 847, 862 (7th Cir. 2018).

It is not immediately apparent how the elements of a Title II claim apply in the context of a police investigation. The Court of Appeals for the Seventh Circuit has considered the issue multiple times, and each time declined to decide whether the statutes apply in that context, instead assuming that "Title II applies to the officers' interactions, that the governmental unit can be held vicariously liable for the actions of individual officers, and that deliberate indifference is the appropriate standard by which to analyze the institutional defendants' conduct." *Culp v. Caudill*, 140 F.4th 938, 942–43 (7th Cir. 2025) (citing *King v. Hendricks Cnty. Commissioners*, 954 F.3d 981, 988 (7th Cir. 2020)). But even with those assumptions, "the plaintiff must show that but for the disability, he would have been able to access the services or benefits desired." *Culp*, 140 F.4th at 943.

As the court of appeals has done, I will assume that the ADA can apply to a police investigation. But Toles's ADA claim still fails on multiple grounds. First, Toles provides no basis in his complaint for inferring that any of the conditions he identifies qualify as a disability under the ADA, or, in other words, that any of the listed conditions substantially limit one or more of Toles's major life activities, that he has a record of having such a limitation, or that any defendant regarded him as having such a limitation. *See* 42 U.S.C. § 12102(1); *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335 (7th Cir. 2019). Second, Toles does not identify any service he was denied because of his disability, and he does not explain why he needed an accommodation to access a service. So I will dismiss all of Toles's claims based on the August 2023 incident.

### B. June 2024 police encounter

#### 1. Allegations of fact

Toles's neighbor called the police when the neighbor heard Toles's wife "crying and sobbing due to a family emergency and a tropical storm." Dkt. 7, ¶ 25. Defendant Reese responded to the call. (Toles says other officers responded as well, but he does not identify who they were.) Instead of offering to help Toles's wife, Reese told her to "shut up."

#### 2. Merits

I understand Toles to be asserting two claims based on this incident: (1) Reese failed to provide Toles's wife with a reasonable accommodation for her "acute mental health crisis"; and (2) Reese treated Toles's wife harshly because she is Native American. Both of these claims fail for the simple reason that Toles's wife is not a plaintiff in this case, and Toles does not have standing to assert claims on behalf of his wife. *See Kowalski v. Tesmer*, 543 U.S. 125, 129, 125 (2004).

But even if Toles's wife were joined as a plaintiff, these claims would fail for other reasons. The ADA claim for failure to accommodate would fail because Toles does not identify a disability his wife suffered from, and he does not identify any service she was denied because of her disability.

The discrimination claim would fail for two reasons. First, Toles does not identify a plausible basis for inferring race discrimination. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774 (7th Cir. 2022). He says that Reese was rude to his wife, but he does not say why it is plausible to infer that the rudeness was because of her race. Second, Toles does not identify any injury his wife suffered because of her race. For example, he does not say that she was arrested or detained. Rude or offensive comments generally do not rise to the level of a discrimination

claim. *See Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 382–83 (7th Cir. 2020). So I will dismiss all the claims based on the June 2024 police encounter.

## C. July 2024 arrest for felony possession of a firearm

### 1. Allegations of fact

Toles called 911 when his wife threatened him. Defendants Reese and Mader responded to the call. While at the home, the officers discovered a firearm that belonged to Toles's wife. Toles had never touched the firearm. Mader handled the firearm with gloves that she had earlier used to pick up Toles's "personal property, including clothing tags." A buccal swab of the firearm indicated "very strong support for the inclusion of" Toles. Dkt. 7, ¶ 42. Reese arrested Toles for felony possession of a firearm. A jury acquitted Toles of the charge.

### 2. Merits

I understand Toles to be raising the following claims based on this incident: (1) Reese arrested Toles because he complained about the August 2023 citation for disorderly conduct, filed a complaint in March 2025, and was commended for engaging in community service in October 2024; (2) Mader "fabricated" evidence by touching the gun after she had touched Toles's personal property, so the arrest was without probable cause; (3) Reese relied on the evidence despite knowing it was tainted; (4) Reese arrested Toles because he is Black; and (5) defendant Hollinger knew Toles's arrest was based on fabricated evidence. None of these theories state a plausible claim.

As for Toles's allegation that Reese arrested him to retaliate for exercising his right to free speech, two of the incidents he is relying on occurred *after* his July 2024 arrest, so they could not have provided the motivation for that arrest. As for the complaint about Mueller's August 2023 conduct, Toles does not identify the context in which he complained or to whom

he complained, so it is not reasonable to infer that Reese or Mader even knew about the complaint. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) ("The protected conduct cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity."). And even if Reese or Mader did know about a complaint, Toles identifies no plausible basis for inferring that Reese or Mader took any adverse action because of that complaint. *See Emerson v. Dart*, 109 F.4th 936, 941–42 (7th Cir. 2024) (retaliation allegations must "must nudge [the plaintiff's] claim across the line from conceivable to plausible") (internal quotation marks omitted).

As for Toles's allegation that Mader fabricated evidence against him, such a claim requires Toles to show that he was deprived of his liberty because of fabricated evidence. *See Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016). In this case, Toles's claim fails for two reasons. First, he does not allege that he was ever deprived of his liberty during the course of his prosecution for felony possession. "[D]ue process is not implicated when . . . the defendant is released on bond following his arrest and acquitted at trial." *Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012). Second, Toles has not plausibly alleged that Mader fabricated evidence. His only basis for that allegation is that Mader failed to change her gloves after she handled Toles's personal items and before she touched the firearm that was the basis for the charge, so the DNA testing was contaminated. But that allegation suggests negligence, not intentional falsification. Toles repeatedly alleges that Mader acted "deliberately" and "knowingly," Dkt. 7, ¶¶ 38, 45, 79, but those are just conclusory statements that are not entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). Toles provides no plausible basis for inferring that Mader was trying to frame Toles for a crime he

10

did not commit.[3] The failure of Toles's claim against Mader necessarily means that his claims against Reese and Hollinger also fail because those claims are contingent on his claim against Mader.

As for Toles's allegation that Reese arrested him because he is Black, that conclusory allegation is not supported with any specific facts. The requirements for pleading a discrimination claim are not onerous, but a plaintiff "must advance plausible allegations that she experienced discrimination because of her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774 (7th Cir. 2022). Toles has not done that. I will dismiss all the claims based on the July 2024 arrest.

### D. August 2024 response to noise complaints

#### 1. Allegations of fact

On August 1 and August 3, unspecified Janesville police officers came to Toles's home after his white neighbor made "false" noise complaints. Officers took no action when Toles reported that his neighbor "had engaged in a pattern of pervasive and severe harassment" against Toles. Dkt. 7, ¶ 49. Toles does not describe any harassment other than the false complaints.

#### 2. Merits

I understand Toles to be asserting the following claims based on these incidents: (1) the officers' conduct was retaliation for Toles's complaint about the Mueller August 2023 citation,

---

[3] Toles also includes allegations in his complaint that his wife told police that the gun was hers. Dkt. 7, ¶ 41. Toles does not explain the relevance of this allegation. But if he means to contend that his wife's statement negates probable cause, he is incorrect. Toles admits that his wife did not make the statement until several days after police found the gun in Toles's kitchen, so officers would have reason not to believe it. The presence of the gun in Toles's home and the presence of his DNA on the gun provided probable cause.

11

Toles's March 2025 complaint, and the October 2024 commendation for Toles's community service; and (2) officers discriminated against Toles because of his race by crediting his white neighbors' complaints against him but not crediting his complaints against them.

These claims fail for multiple reasons. First, Toles does not identify which officers were involved in the August 2024 incident, so I cannot reasonably infer that any of the defendants are responsible for the alleged conduct.

Second, Toles does not identify any injury he suffered beyond the police responding to a noise complaint. Toles's position seems to be that the response itself was discriminatory because officers should have known that the complaints were false. But Toles identifies no factual basis for this other than his own say, and he identifies no other instance in which officers simply disregarded a complaint of a disturbance without even investigating it. He says that officers did not investigate his claim of "harassment," but he does not explain what he means by that. He does not say that officers ever refused to respond to a complaint that he made about an ongoing disturbance by his neighbor or anyone else, so it is not reasonable to infer discriminatory intent from the mere fact that officers responded to a complaint.

Third, Toles identifies no plausible basis for inferring that the police response was retaliatory. The August 2024 incident occurred before two of the three alleged instances of protected conduct, so that after-the-fact conduct could not have motivated the officers' response. Toles's alleged complaint about the August 2023 citation occurred earlier, but Toles's pleading includes no plausible allegations that his complaint had anything to do with the officers' decision to come to Toles's house in July 2024. So I will dismiss all of Toles's claims cased on the August 2024 incidents.

12

### E.  October 2024 citation for disorderly conduct

#### 1.  Allegations of fact

Janesville's city manager sent Toles a letter, commending his business for donating food to tornado relief efforts. The following day, defendant Dix came to Toles's home to investigate an alleged "disturbance." Dix issued Toles disorderly conduct citations to Toles and his wife without any basis for doing so. The citations were later dismissed.

#### 2.  Merits

I understand Toles to be raising the following claims based on this incident: (1) Dix issued the citations because of Toles's complaint about Mueller's August 2023 citation for disorderly conduct and because of the commendation he received for community service; and (2) Dix issued the citation because of Toles's race. These claims fail to state a plausible claim.

Toles's claim that Dix cited him because he was commended for public service is not supported by the law. Toles's claim is based on the First Amendment, but such a claim requires allegations that a defendant retaliated against him for *his* speech. *See Harnishfeger v. United States*, 943 F.3d 1105, 1112–13 (7th Cir. 2019). The commendation was the speech of the city manager, not Toles's speech. If Toles means to contend that Dix retaliated against him for donating food, that claim fails because donating food is not speech, and it is not protected by the Constitution.

In any event, there are no plausible allegations supporting any of Toles's claims that Dix cited him because of his race or speech. I will dismiss these claims.

### F.  Municipal liability

Toles contends that the city of Janesville violated his rights in the following ways:

13

- tolerating and encouraging false evidence, including Mueller's statement that he would lie to a judge and Mader's fabrication of DNA evidence;

- failing to adequately investigate Toles's March 2025 complaint about all of the incidents in this case;

- retaliating against Toles for criticizing the police;

- crediting Toles's neighbor's false accusations and discrediting Tole's allegations against his neighbors;

- engaging in selective enforcement based on race;

- failing to train officers on probable cause, how to handle evidence, de-escalation techniques, the law prohibiting retaliation and discrimination, the duty to intervene, and proper investigation of domestic violence allegations.

A constitutional claim against a municipal defendant such as the city of Janesville requires the plaintiff to prove four things: (1) a constitutional deprivation; (2) action or inaction by the municipal defendant or its employees that can be fairly described as the municipality's policy; (3) notice to the defendant that its policy would lead to constitutional violations; and (4) a direct causal connection between the defendant's policy and the constitutional injury. *See Estate of Wallmow v. Oneida Cnty.,* 99 F.4th 385, 393–94 (7th Cir. 2024); *Thomas v. Neenah Joint School District*, 74 F.4th 521, 524 (7th Cir. 2023); *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022); *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago,* 988 F.3d 978, 986–87 (7th Cir. 2021).

In this case, Toles's allegations fail on the first element. As discussed throughout this opinion, Toles's complaint does not include plausible allegations that Toles suffered a constitutional deprivation.

14

But even if one of the individual defendants had violated Toles's constitutional rights, there are no plausible allegations that the city's own policies caused that violation. Most of the conduct Toles attributes to the city is the conduct of the individual defendants. But the city cannot be held liable simply because it employed someone who violated Toles's rights. *See Betts v. Boone Cnty., Illinois*, 178 F.4th 1051, 1056 (7th Cir. 2026). The plaintiff must show that the municipality itself engaged in unconstitutional conduct. *Id*. The city's failure to prevent an employee from violating the Constitution does not provide the basis for municipal liability unless the city had notice that constitutional violations were likely to occur because of the failure to train or that such a risk was obvious. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 379–81 (7th Cir. 2020).

Toles says that *he* provided the requisite notice through his March 2025 letter complaining about all the incidents in this case. But the letter came *after* the alleged constitutional violations, and "it is well established that conduct occurring after a constitutional violation cannot provide the basis for liability of an individual or government entity." *K.M. on behalf of L.E. v. Madison Metro. Sch. Dist.*, No. 21-cv-683-jdp, 2022 WL 17155923, at *1 (W.D. Wis. Nov. 22, 2022) (citing *Connick v. Thompson*, 563 U.S. 51, 63 (2011), and *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Toles identifies no basis for inferring that the city was on notice of any likely constitutional violations, so I will dismiss the municipal liability claim.

## G. Leave to replead

The general rule is that a plaintiff should be granted at least one chance to replead a defective complaint. *Zimmerman v. Bornick*, 25 F.4th 491, 493–94 (7th Cir. 2022). It is possible

15

that Toles could fix some of the problems with his claims, so I will give him three weeks to file

an amended complaint.

ORDER

IT IS ORDERED that the:

1. The original complaint, Dkt. 1, and the first two amended complaints, Dkt. 5 and Dkt. 6, are DISMISSED as moot.

2. The second motion for leave to proceed in forma pauperis, Dkt. 4, is DENIED as moot.

3. The third amended complaint (identified by Toles as the "fourth amended complaint"), Dkt. 7, is DISMISSED for failure to state a claim upon which relief may be granted.

4. Toles may have until September 1, 2026, to file an amended complaint that fixes the problems identified in this order. If Toles does not respond, I will dismiss the complaint with prejudice and direct the clerk of court to enter judgment.

Entered August 10, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge